IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT DEJOHNETTE III, <br><br> Claimant, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] <br><br> Respondent. | No. 16 C 11378 <br><br> Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Claimant Robert Dejohnette III ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9.] This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c) and 405(g).

The parties have filed opposing briefs in support of and in opposition to the Commissioner's decision [ECF Nos. 18, 19], which the Court will construe as cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Claimant's motion [ECF No.18] is granted, and the Commissioner's motion [ECF No. 19] is denied. This matter is remanded for further proceedings consistent with the Court's Memorandum Opinion and Order.

---

[1] Nancy A. Berryhill is substituted for her predecessor Carolyn W. Colvin pursuant to Federal Rule of Civil Procedure 25(d).

# I. PROCEDURAL HISTORY

On January 7, 2010, Claimant filed his claim for DIB alleging the onset of his disability was October 15, 2008. (R. 126-34.) The claim was denied initially on April 22, 2010, and upon reconsideration on July 7, 2010. (R. 72-75; 78-81.) Claimant requested a hearing before an Administrative Law Judge ("ALJ"). Represented by counsel, Claimant appeared and testified at a hearing before an ALJ on September 22, 2011. (R. 40-69.) A vocational expert also testified at the hearing. (*Id.*)

On October 18, 2011, the ALJ issued his opinion denying Claimant benefits based on a finding that he was not disabled under the Act. (R. 36.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations ("SSR"). 20 C.F.R. § 404.1520. At step one, the ALJ determined Claimant had not engaged in substantial gainful activity since the date of his alleged onset of disability. (R. 29.) At step two, the ALJ determined that Claimant was suffering from the following severe impairments: obesity, status post-multiple fractures secondary to a motor vehicle accident, residual right foot drop and other symptoms. (*Id.*) At step three, the ALJ determined that Claimant did not meet or equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) After step three but before step four, the ALJ determined Claimant had the Residual Functional Capacity ("RFC") to perform sedentary work and a restricted range of light work, as defined in 20 C.F.R. § 404.1567(b), provided the work allows use of an assistive devise and does not require balancing, crouching, or climbing ladders, ropes, or scaffolds, using the right lower extremity to push, pull, or operate foot controls, more than occasional stooping, kneeling, crawling, or climbing of ramps or stairs, and allows Claimant to avoid concentrated exposure to extreme cold an hazards (e.g. machinery, heights, etc.). (R. 31.) At step four, the ALJ determined Claimant

could not perform any past relevant work. (R. 34.) At step five, the ALJ determined that jobs existed in significant numbers in the economy that Claimant could perform, including a service dispatcher, a telephone information clerk, or an order clerk. (R. 34-35.) The ALJ concluded that Claimant was not disabled from October 15, 2008, until the date of his decision on October 18, 2011. (R. 36.)

The Social Security Administration Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner, and Claimant appealed to the district court. (R. 426.) Magistrate Judge Maria Valdez, presiding by consent, issued a Memorandum Opinion and Order on December 23, 2015, remanding the case and finding that the ALJ had erred in assessing Claimant's RFC by not explicitly addressing Claimant's pertinent physical limitations, specifically his postural requirements for a sit/stand option, in a way that allowed for effective review. (R. 440-41.) *See* 2105 WL 9315536 (N.D. Ill. Dec. 23, 2015).

On remand, Claimant again was represented by counsel. He appeared and testified at a second hearing before another ALJ on June 23, 2016. (R. 292-333.) A medical expert and a vocational expert also testified at Claimant's second hearing. (R. 292.)

On August 22, 2016, the ALJ then presiding over the case again denied Claimant's application for DIB. (R. 351.) This opinion also followed the five-step sequential evaluation process required by the SSRs. 20 C.F.R. § 404.1520. At step one, the ALJ determined that the Claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 15, 2008, through his date last insured which was December 31, 2013. (R. 340.) At step two, the ALJ determined that the Claimant suffered from the following severe impairments: degenerative disc disease of the lumbar spine, right foot-drop secondary to right

peroneal nerve damage, right knee fracture, right ankle fracture, migraine headaches, and obesity. (*Id.*) At step three, the ALJ determined the Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 340-41.) Between step three and four, the ALJ determined Claimant had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with additional modifications and non-exertional limitations; occasionally lift a maximum of twenty pounds, frequently lift and/or carry less than ten pounds, walk and/or stand for about two hours total out of an eight hour workday, sit for about six hours out of an eight hour workday, and occasionally push and/or pull to include operation of foot controls with the bilateral lower extremities as restricted by the limitations on lifting and/or carrying, and push and/or pull to include operation of hand controls with bilateral upper extremities as restricted by the limitations on lifting and/or carrying subject to postural limitations of never climbing ladders, ropes, or scaffolds, occasionally climbing ramps or stairs, no balancing on right leg, occasionally balancing on left leg, and occasionally stooping, crouching, kneeling, or crawling, and manipulative limitations of occasionally reaching overhead with bilateral upper extremities and environmental limitations of avoiding all exposure to unprotected heights and work hazards, no commercial driving, and avoiding concentrated exposure vibrations. (R. 344.) At step four, the ALJ determined Claimant was unable to perform any past relevant work. (R. 349.) Finally, the ALJ determined that through Claimant's date last insured, there were jobs that existed in significant numbers in the national economy that Claimant could have performed, including assembler, inspector, surveillance system monitor and bonder, and if the assessed RFC were modified to a sedentary exertion level, then there still were jobs available. (*Id.*) For these

4

reasons, the ALJ found that Claimant was not disabled from October 15, 2008, through December 13, 2013, which was Claimant's date last insured. (R. 351.)

Claimant did not file exceptions with the Appeals Council, and the Appeals Council did not assume jurisdiction over the case, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.984; *Spraggins v. Berryhill*, 2017 WL 4169749 (N.D. Ill. 2017).

## II. STANDARD OF REVIEW

A district court will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law. 42 U.S.C. § 405(g); *Lopez ex. rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## III. ANALYSIS

Claimant alleges a number of errors on appeal. First, Claimant argues that the ALJ erred in not following the law of the case and failed to address Claimant's postural limitations of sitting and standing, which Magistrate Judge Valdez explicitly required in her decision remanding this matter for further proceedings. [ECF No. 18, at 7-8.] Second, Claimant argues the ALJ made several errors in symptom evaluation, including failing to explain which of Claimant's symptoms are consistent or inconsistent with the medical evidence in the record, drawing negative inferences from Claimant's treatment history, and improperly assessing Claimant's RFC. [ECF No. 18, at 9-14.] Third, Claimant argues the ALJ failed to properly assess his migraines and any limitations they may cause. [ECF No. 18, at 14-15.]

### A. Remand Is Required Because the ALJ Did Not Follow The Law of the Case

This case originally was remanded on December 23, 2015, because the first ALJ determined Claimant could sit for six hours and stand or walk for two out of each eight hour day without evaluating Claimant's need to change positions and lie down and did not provide evidentiary support for his conclusion. (R. 425-55.) Magistrate Judge Valdez determined that the ALJ's failure to assess Claimant's limitations left the court unable to evaluate whether the ALJ erred in his analysis. (R. 439.) Judge Valdez reminded the ALJ that he has a duty to "evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." (R. 439, quoting *Villano*, 556 F.3d at 563.) Without knowing whether the ALJ considered and dismissed Claimant's alleged postural limitations, it was impossible to determine whether the ALJ accounted for all of Claimant's pertinent limitations in reaching his conclusion and, therefore, whether his reliance on the VE's testimony was sound. (R. 439-40.)

On remand, Claimant appeared and testified at a hearing before a different ALJ. The second ALJ issued her decision on August 22, 2016, again denying Claimant benefits. In her RFC determination, the second ALJ also concluded that Claimant was able to sit for about six hours out of an eight hour day and stand or walk for about two hours out of an eight hour day. (R. 344.) The second ALJ acknowledged that Claimant testified he could sit for thirty minutes to one hour and then needed to stand for thirty minutes to an hour, but, again, the ALJ did not explain why she discredited this testimony. (R. 346.)

The law of the case doctrine requires that an administrative agency, on remand from a court, conform its further proceedings in the case to the principles set forth in the judicial decision on remand unless there is a compelling reason to depart from it. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). Refusal to comply with a district court's order is cause for remand. *Id.*; *Wallace v. Colvin*, 193 F. Supp. 3d 939, 941 (N.D. Ill. 2016). After the second hearing, the ALJ yet again did not address how she determined Claimant's postural limitations even though there is evidence in the record suggesting different limitations than the ones the second ALJ concluded were appropriate. The second ALJ failed to specifically address the testimony from Claimant that was inconsistent with her RFC, again leaving the Court with no logical bridge by which to review her conclusion. This is unfortunate since, even if the ALJ's ultimate decision is correct, the Court cannot affirm it if the ALJ did not provide the logical bridge to support that conclusion.

The Court is not persuaded by the Commissioner's argument that Claimant has not provided significant evidence of his ailments. The ALJ ignored the law of the case expressly requiring her to address Claimant's limitations specifically, and it is impossible to evaluate what weight the ALJ gave to Claimant's testimony regarding his limitations. While the ALJ recites

7

Claimant's testimony regarding his need to stand after sitting for thirty minutes, mere recitation of the evidence is not a substitute for actual analysis or explanation of a logical chain of reasoning, and it does not allow this Court to review effectively the ALJ's decision. Accordingly, remand is mandated because the ALJ did not provide sufficient explanation for her analysis.

The Commissioner argues that when a district court remands a case, the agency develops the record as it sees fit and then completes a de novo review of the evidence to determine disability. [ECF. 20, at 4.] The Commissioner also argues that the prior remand in this case does not direct the ALJ to make a specific disability determination or include specific limitations in the RFC. (*Id.*) But the prior Memorandum Opinion and Order in this case specifically requires the Commissioner to engage in an explicit discussion of Claimant's alleged sit/stand limitations. (R. 441.) The second ALJ did not follow this directive and did not explicitly address these limitations in a way that provides support for her decision or that allows this Court to review her analysis.

Although Claimant argues that the Court should award benefits without the need for additional proceedings before the ALJ, the record in this case does not support that result. An award of benefits is appropriate only where all factual issues have been resolved and the "record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). Obduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability. *Briscoe*, 425 F.3d at 357. To award benefits, the Court must be satisfied that the record supports only one conclusion. The Court is not convinced there is only one conclusion in this case. Here, the ALJ may have properly discounted Claimant's allegations that he needs to stand 30 minutes out of every hour. The record does not provide sufficient support for the Court

to undertake what is properly the Commissioner's job, that of fact-finding, and issue a decision or award benefits based on its de novo review of the record. Therefore, Court declines to award Claimant benefits in this case without further proceedings before the Commissioner.

**B. The ALJ Did Not Properly Evaluate Claimant's Symptoms**

Claimant also argues that the ALJ failed to build a logical bridge in her evaluation of Claimant's symptoms. The Court agrees. When an individual's symptoms and related limitations are found to be inconsistent with the evidence in the record, the ALJ must explain which of an individual's symptoms she found consistent or inconsistent with the evidence and how her evaluation of the individual's symptoms led to her conclusions. SSR 16-3p, 2016 WL 1119029, at *8.

The ALJ here uses template language that courts repeatedly have criticized, which reads as follows: "[Claimant's] statements concerning the intensity, persistent and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 346.) Such boilerplate language fails to inform the Court in a reviewable way of the specific evidence the ALJ considered in reaching her conclusion. *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011); *Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011). "Not entirely consistent" is an opaque phrase that fails to specify what evidence the ALJ considered consistent and what evidence she considered inconsistent with the record. Without more, effective review is difficult or even impossible. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

The Court recognizes that this template language is not necessarily fatal to an ALJ's decision if substantial evidence supports her conclusion. *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015). An ALJ must articulate in a rational manner the reasons for her assessment of a

9

claimant's RFC and, in reviewing that determination, the court must confine itself to the reasons supplied by the ALJ. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Therefore, the ALJ herself must connect the evidence to the conclusion through a cognizable and accurate logical bridge. *Id.* The ALJ's opinion is important "not in its own right but because it tells us whether the ALJ has considered all the evidence." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2009). Here, however, the ALJ does not elaborate about which symptoms she finds consistent or inconsistent with the objective medical evidence, much less say how she evaluates each symptom.

Claimant argues that the ALJ erred by drawing a negative inference from Claimant's course of treatment. The Court agrees. An ALJ is not allowed to infer from the fact that a claimant did not seek medical care that he is a malingerer without asking him why he did not seek care and specifically whether he had health insurance. *Garcia v. Colvin*, 741 F.3d 758, 761-62 (7th Cir. 2013). Here, the ALJ draws a negative inference from Claimant's lack of medical history. (R. 346.) Specifically, she concludes that there is "<u>no indication</u> that the claimant could not afford medical treatment or that he did not have access to medical insurance." (*Id.*) (emphasis added). Yet, the ALJ did not ask whether Claimant could afford treatment. There also is a gap of three years in Claimant's medical history, from which the ALJ suggests that "claimant's problems were not so severe." (*Id.*) The ALJ failed to explain why Claimant should have continued to seek treatment to improve his condition when the record shows that his treating physician had concluded that his condition had plateaued. (R.250).

The Commissioner argues that evidence of a claimant's failure to seek treatment is acceptable as one factor in a credibility determination. *See Mullinax v. Colvin*, 2015 WL 7749421, at *5 (October 26, 2015). That may be an accurate statement of law. Here, however,

the ALJ's sole basis for discrediting Claimant's testimony is the lack of medical treatment, yet the ALJ did not ask Claimant about why he did not seek medical treatment. The Commissioner also cites *Griffith v. Callahan*, 138 F.3d 1150 (7th Cir. 1998), to illustrate that the absence of a referral to a treating physician may be a sign of non-disabling impairment. The Court does not disagree with this statement of law. In this case, however, since the ALJ does not provide sufficient explanation to support her conclusion; the logical bridge is missing.

Finally, Claimant testified that the pain in his leg and his back made it difficult for him to concentrate and pay attention. (R. 311.) When asked to elaborate, Claimant testified that he had mental difficulties coping with the fact he no longer could run or do any activities in which he used to participate. (*Id.*) At the hearing in 2011, Claimant testified that he was fired because he could not perform at the pace required due to the pain he was suffering. (R. 46.)

In this case, it seems that the ALJ did not consider any limitations on concentration, persistence, or pace because Claimant had returned to school and completed a two-year general studies degree in one and a half years. The ALJ, however, did not analyze Claimant's school performance, including his ability to maintain attendance, even though Claimant testified he had difficulty concentrating and sometimes performed poorly. (R. 324, 315-16). Moreover, there is testimony from Claimant that he had consistent pain which impacted him as well. (*Id.*) And the ALJ failed to explain why she did not credit Claimant's testimony that opiates caused him significant side effects without providing significant relief. (R. 309-310.)

Based on this record, the Court is not able to determine whether Claimant's return to school provides substantial evidence that his limitations in concentration, persistence, and pace are exaggerated because there is minimal evidence regarding this period. It may be that the ALJ is right and Claimant carried a rigorous, all-day academic course load; but it may also be that he

attended one or two classes a week, missed frequently, and performed poorly. The record does not provide sufficient information for the Court to draw any conclusions. This is precisely the sort of gap in the evidence that the ALJ had a duty to address.

In this case, the Court does not disagree that Claimant's lack of treatment for a substantial period of time for supposedly severe ailments is concerning and may make it difficult for Claimant to prove he is disabled. Claimant, however, has provided some evidence and reasons to explain both his symptoms and lack of treatment that were not addressed by the ALJ in her opinion. As a result, the ALJ did not sufficiently develop the record as to why Claimant did not seek medical treatment and why she concluded that Claimant's alleged limitations in concentration, persistence and pace were exaggerated, which she must do so before she can draw negative inferences from this record. Even if there were substantial evidence in support of the ALJ's conclusions, the ALJ did not build the logical bridge necessary for this Court to review the ALJ's analysis. Therefore, for all of these reasons, remand is required for further explanation.

## C. Other Issues

The Court declines to address Claimant's argument that the ALJ erred in her assessment of Claimant's migraine headaches in light of the remand on other grounds. On remand, however, the ALJ should consider and evaluate all of Claimant's physical and mental impairments that are supported in the record and should consider all of the evidence of record, including Claimant's testimony, when determining Claimant's RFC. Finally, the ALJ also should consider, as appropriate, whether there are jobs that existed in the economy in significant numbers that Claimant could perform during the period of eligibility.

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 18] is granted, and the Commissioner's Motion [ECF No. 19] is denied. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 22, 2018